### IN THE UNITED STATES DISTRICT COURT
### OF THE DISTRICT OF DELAWARE

| | |
|---|---|
| RAUSHAN RICH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| | ) |
| | ) |
| | ) |
| UNIVERSITY OF DELAWARE & | ) |
| | ) |
| CHIEF PATRICK OGDEN, in his individual and official capacity as Chief of Police of the University of Delaware | ) ) ) ) ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

## INTRODUCTION

1. Plaintiff, Raushan Rich ("Plaintiff") files this action against the University of Delaware ("Defendant") and Chief of Police Patrick Ogden ("Defendant Ogden") for back pay, front pay, compensatory damages, punitive damages and attorneys' fees for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §1981, 42 U.S.C. §1983 and the Delaware Whistleblowers' Protections Act.

## JURISDICTION

2. This Court has federal question jurisdiction over this cause of action pursuant to 28 U.S. Code § 1331.

3. This Court has supplemental jurisdiction over all state causes of action pursuant to 28 U.S.C. §1367.

4. Venue is proper in this district pursuant to 29 U.S.C. § 1331, as well as 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff is a resident of New Castle County, Delaware, who at all times relevant to this Complaint was an employee of Defendant University of Delaware.

6. Defendant University of Delaware is a privately governed, state-assisted institution of higher education and existing pursuant to Delaware law.

7. Defendant Patrick Ogden, Chief of Police of the University of Delaware, acted both individually and under color of law as an agent or employee of the University of Delaware at all relevant times hereto.

## ADMINISTRATIVE PROCESS

8. On July 29, 2021, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

9. On October 8, 2021, Plaintiff received a Right to Sue Notice from the EEOC, hereto attached as *Exhibit A*.

10. Plaintiff has filed this action within ninety (90) days after receipt of his Right to Sue Notice from the EEOC.

11. Plaintiff has satisfied all statutory prerequisites for filing this action.

## FACTS

12. Plaintiff began his employment with Defendant on June 18, 2012, in the position of Police Officer.

13. On July 1, 2020, Plaintiff was promoted to Sergeant.

14. Plaintiff performed highly during his employment with Defendant, consistently receiving high performance evaluations.

15. On August 26, 2020, Defendant began moving students into the residence halls.

16. Defendant established separate quarantine residence halls for students who were positive or suspected to be positive for the COVID-19 virus ("COVID").

17. Defendant's transportation services were tasked with transporting students with COVID to the quarantine residence halls.

18. Defendant scheduled the transportation services to start on September 1, 2020, six days after students moved on campus, in order to train their staff on the proper way to safely conduct the COVID transports.

19. On August 29, 2020, Plaintiff was advised Defendant now required the Police Department to transport COVID positive students. At this time, officers were not trained on how to properly and safely handle the transporting of students with this highly contagious and dangerous disease.

20. Defendant acquired vans to conduct the COVID transports, however, Defendant failed to provide officers training on the specific operation and functions of the transport vans.

21. Defendant purchased a decontamination machine, however, officers were not trained on the proper use of said machine.

22. Defendant provided its officers with personal protective equipment (PPE), however, Defendant failed to train the officers on how to properly don (put on), doff (take off), and dispose of the PPE. Proper PPE donning and doffing is critical in preventing one from self-contaminating.

23. Plaintiff contacted Lieutenant Adrienne Thomas to report his concern over using the Police Department to transport COVID positive students without out proper training. He stated it created an unnecessary exposure and health and safety risk to officers for non-law enforcement purposes.

24. Lt. Thomas agreed with Plaintiff's legitimate safety reports and stated she knew using the Police Department for COVID transport would be problematic for officers.

25. Plaintiff was instructed not to brief his squad on the COVID transports.

26. Lt. Thomas instructed Plaintiff to immediately contact her if he received a COVID transport call.

27. On August 30, 2020, Lt. Thomas advised Plaintiff she brought his health and safety reports to the attention of Major Evans who advised the Police Department would be required to conduct transports of COVID positive students until September 1, 2020, regardless of the risk.

28. Plaintiff again reported Defendant's health and safety violations to Defendant regarding the COVID transports.

29. On the evening of August 30, 2020, Plaintiff received a dispatch call to transport a COVID positive student to a quarantine residence hall. Plaintiff advised his squad he did not feel safe transporting a COVID positive student as they created unnecessary risk and exposure for non-law enforcement purposes, coupled with the fact neither Plaintiff nor any members of his squad were trained on how to conduct a COVID transport.

30. Each member of Plaintiff's squad stated to Plaintiff they also had safety concerns with transporting the COVID positive student and stated they were unwilling to conduct the transport.

31. Plaintiff then contacted Lt. Thomas and reported to her the health and safety violations involved with the requested transport. Despite this, Lt. Thomas advised Plaintiff he needed to pick someone on his squad to conduct the transport.

32. Lt. Thomas thereafter advised Plaintiff that Corporal Leland Barker will be conducting the transport. Cpl. Barker, who was also inadequately trained, reluctantly agreed to conduct the transport.

33. Plaintiff thereafter provided Cpl. Barker with the motor pool keys and offered to assist Cpl. Barker with his PPE equipment. After Cpl. Barker completed the COVID transport, he contacted Plaintiff to advise him the plastic barriers in the transport vans had gaps in them, which created a greater risk of contracting COVID.

34. Later that evening on August 30, 2020, Lt. Thomas advised Plaintiff he was placed on emergency administrative leave.

35. On August 31, 2020, Plaintiff was advised by Captain Jason Pires and Lieutenant Ferrill he was subject to an internal affairs investigation and charged with insubordination.

36. As a result of the internal affairs investigation, Defendant substantiated the charge of insubordination against Plaintiff.

37. On October 20, 2020, Defendant released a personnel order which stated Plaintiff was terminated pending a CJC hearing. However, at this time, Plaintiff was not yet terminated and was still receiving his full salary and benefits.

38. On December 4, 2020, a Hearing Board selected by the Criminal Justice Council was convened who substantiated the charge of insubordination against Plaintiff.

39. In accordance with Defendant's own discipline matrix, the first offense for insubordination requires a suspension for forty (40) hours to termination. A second offense for

insubordination ranges from a demotion to a termination. The third offense of insubordination results in a termination.

40. Plaintiff had no prior disciplinary issues in his eight years of employment with Defendant.

41. Defendant, through Chief Patrick Ogden, terminated Plaintiff for alleged violations for which other Caucasian employees were not terminated or even disciplined for.

42. Defendant has engaged in a pattern and practice of disproportionately treating and disciplining its African American officers, while failing to discipline its Caucasian officers.

43. It is Defendant's practice to issue two personnel orders regarding any officer going through the disciplinary process: one at the onset and another at the conclusion. In Plaintiff's case, Defendant released an additional personnel order midway through Plaintiff's process, stating he was terminated, although he was not.

44. Prior to conclusion of the disciplinary process related to Plaintiff, Defendant prematurely issued a personnel order stating Plaintiff was terminated. Upon information and belief, Defendant has not issued these types of personnel orders regarding its Caucasian employees.

## CLAIMS AND DAMAGES

Based upon the above allegations, Plaintiff maintains the following legal claims against Defendant:

### COUNT I
### Violation of the Delaware Whistleblowers' Protection Act
### Against Defendant University of Delaware

45. The allegations of Paragraphs 1 through 44 are incorporated by reference as if fully restated herein.

46. Plaintiff reported a violation as defined in the Delaware Whistleblower Protection Act when he reported lack of proper safety training and health and safety violations regarding COVID to Defendant.

47. Plaintiff's reported acts of health and safety violations, including OSHA violations, violations of the Center for Disease Control ("CDC") regulations and guidelines, and violations of Article XII Safety and Health of Plaintiff's Collective Bargaining Agreement, are laws, rules and regulations promulgated to protect employees from health and safety hazards.

48. Defendant was previously aware of the health and safety hazards and violations relating to the COVID transports, however, Defendant failed to take corrective or protective action.

49. Defendant discharged Plaintiff in retaliation for reporting to his supervisor violations, as defined by the Delaware Whistleblowers' Protection Act, which occurred regarding the transportation of COVID positive students without proper safety training.

50. There is a casual connection between Plaintiff's reports and the adverse action of discharge based upon the temporal proximity.

51. Defendant terminated Plaintiff in violation of the Delaware Whistleblowers' Protection Act.

52. Plaintiff has been injured by Defendant's violation of the Delaware Whistleblowers' Protection Act, and as a result, suffered from economic loss, emotional distress, and humiliation.

53. Plaintiff is entitled to damages for back pay, front pay, benefits, consequential damages, and compensatory damages.

54. Plaintiff is entitled to punitive damages regarding Defendant's conduct to prevent future violations.

## COUNT II
**Discrimination Based on Race in Violation of the Title VII of the Civil Rights Act of 1964**
**(42 U.S.C. §§ 2000e *et al.*)**
**Against Defendant University of Delaware**

55. The allegations of Paragraphs 1 through 54 are incorporated by reference as if fully restated herein.

56. Defendant employs fifteen or more employees and is an "Employer" as defined by 42 U.S.C. § 2000e(b).

57. At all times relevant hereto, Plaintiff was employed by Defendant and is an "Employee" as defined by 42 U.S.C. § 2000e(f).

58. Plaintiff received a Right to Sue letter from the EEOC on October 8, 2021.

59. Plaintiff has satisfied all statutory prerequisites for filing this action.

60. Defendant discriminated against Plaintiff in the terms and conditions of his employment on the basis of his race in violation of Title VII of the Civil Rights Act of 1964.

61. Defendant subjected Plaintiff to disparate treatment based upon his race, including but not limited to subjecting him to unfair and discriminatory discipline as a result of his race.

62. Plaintiff was qualified for the position he held.

63. Plaintiff suffered an adverse employment action when he was terminated by Defendant.

64. Plaintiff was treated less favorably than other white officers.

65. Upon information and belief, other white officers engaged in conduct more egregious and serious than Plaintiff, however, they were not terminated as Plaintiff was.

66. Defendant has intentionally violated Plaintiff's rights under Title VII, with malice or reckless indifference, and as a result, is liable for punitive damages.

67. As a direct result of the discriminatory and wrongful conduct of Defendant, Plaintiff has suffered and continues to suffer from severe emotional distress, humiliation, anxiety, irreparable damage to his professional career and economic loss.

### COUNT III
### 42 U.S.C. § 1983
### Against Defendant University of Delaware and Defendant Ogden

68. The allegations of Paragraphs 1 through 67 are incorporated by reference as if fully restated herein.

69. Defendants University of Delaware and Defendant Ogden, acting under color of state law, have engaged in a pattern and practice of disproportionately treating and disciplining its African American officers, while failing to discipline its Caucasian officers.

70. The incidents of race discrimination described in the above paragraphs had the effect of substantially interfering with Plaintiff's work performance by creating a hostile, intimidating and offensive working environment amounting to discrimination in violation of Plaintiff's right under 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

71. Defendants violated the rights secured to Plaintiff by 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution to be free from race discrimination in public employment in that, having actual or constructive knowledge of the discrimination, Defendants acted with deliberate indifference to Plaintiff's rights, in failing to intervene to stop the unlawful conduct.

72. These acts constitute a pattern, custom and practice in violation of Plaintiff's constitutional rights under 42 U.S.C. § 1983.

73. Defendants consciously acquiesced to the known discrimination by willfully failing to respond to it or take any action.

74. Defendant Ogden knew of the discriminatory conduct, acted with deliberate indifference and failed to report or investigate the discrimination occurring at the University and thereby acquiesced to the discriminatory behavior. This allowed Plaintiff to be continually discriminated against.

75. As a result of Defendants' deliberate indifference to Plaintiff's rights and acquiescence of the misconduct outlined above, Plaintiff continued to be discriminated against.

76. As a direct and proximate result of Defendants' acts and conduct which caused Plaintiff to be denied equal protection under the law, Plaintiff has suffered those emotional distress damages and losses alleged herein and has incurred attorney's fees.

## COUNT IV
### Violations of 42 U.S.C. §1981
### Against Defendants University of Delaware and Defendant Ogden

77. The allegations of paragraphs 1 through 76 are incorporated by reference as if fully restated herein.

78. Plaintiff was denied his right to make, enforce and to fully enjoy the rights established by his contractual employment relationship with Defendant because of his race as an African American.

79. Plaintiff was denied his rights under his contractual employment relationship with Defendant that were enjoyed by similarly situated Caucasian police officers and employees. Plaintiff was denied equal terms and conditions of employment.

80. Plaintiff's race was a motivating factor in Defendants' decision to suspend and terminate Plaintiff.

81. The discriminatory actions of Defendants were intentional, willful and/or reckless.

82. Defendants, acting through other management and administrative personnel of the University, including Defendant Ogden, are responsible for the discriminatory conduct towards Plaintiff on account of his race, and have failed to take any action to correct the discriminatory employment practices directed against Plaintiff.

83. The unlawful discriminatory employment practices proximately caused Plaintiff to suffer, *inter alia*, loss of wages, emotional distress entitling Plaintiff to remedies and damages, including but not limited to compensatory and punitive and equitable damages relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court order the following relief in favor of Plaintiff:

A. Declare the conduct by Defendants to be in violation of Plaintiff's statutory rights and common law rights.

B. Awarding Plaintiff any and all consequential damages, including, but not limited to lost wages, salary, employment benefits, back pay, front pay, pre and post judgement interest, equity, liquidated damages, and any or all pecuniary damages.

C. Awarding Plaintiff all compensation due as a result of Defendants' violations herein.

D. Awarding Plaintiff an equal and additional amount as liquidated damages.

E. Awarding Plaintiff costs and reasonable attorney's fees.

F. Awarding Plaintiff pre and post judgment interest at the legal rate.

G. Any and all such other relief as the Court deems appropriate under the circumstances.

                                        **ALLEN AND ASSOCIATES**
                                        */s/ Michele D. Allen*
                                        Michele D. Allen (#4359)
                                        Emily A. Biffen (#6639)
                                        4250 Lancaster Pike Suite 230
                                        Wilmington, DE 19805
                                        302-234-8600
                                        302-234-8602 (fax)
                                        michele@allenlaborlaw.com
                                        emily@allenlaborlaw.com
                                        *Attorneys for Plaintiff*

Dated: January 6, 2022