IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RAUSHAN RICH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 22-27-RGA |
| | ) |
| UNIVERSITY OF DELAWARE and | ) |
| CHIEF PATRICK OGDEN, in his capacity | ) |
| as Chief of Police of the University of | ) |
| Delaware, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

Presently before the court in this civil rights action is a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), which was filed by the University of Delaware (the "University") and Chief Patrick Ogden ("Ogden;" collectively, "Defendants"). (D.I. 5)[1] For the following reasons, I recommend that the court GRANT the pending motion to dismiss without prejudice.

---

[1] The briefing associated with the pending motions is found at D.I. 6, D.I. 8, and D.I. 10. The court also solicited supplemental briefing on the applicability of Eleventh Amendment immunity to Plaintiff's cause of action under the Delaware Whistleblowers' Protection Act based on Third Circuit precedent issued after the completion of briefing on the pending motion. (D.I. 11) The supplemental briefing can be found at D.I. 12, D.I. 13, and D.I. 14. In it, the parties agree that Eleventh Amendment immunity does not extend to the University of Delaware based on a decision issued by this court nearly fifty years ago. *See Gordenstein v. Univ. of Delaware*, 381 F. Supp. 718 (D. Del. 1974). According to the parties, factual determinations regarding the University of Delaware's funding, its treatment under state case law and statutes, and its autonomy from state control have not changed in the half-century since the *Gordenstein* decision issued. (D.I. 12; D.I. 13; D.I. 14); *see Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016). The parties did not engage in any meaningful analysis of more recent Third Circuit precedent discussing "the near unanimity among the Courts of Appeals that the factors relevant to an Eleventh Amendment inquiry typically favor immunity in the state college setting," but the parties' agreement renders such an analysis by the court in this particular case moot. *Maliandi*, 845 F.3d at 85.

I.  BACKGROUND

Plaintiff Raushan Rich ("Plaintiff") was a University police officer who was hired on June 18, 2012, and was promoted to Sergeant on July 1, 2020. (D.I. 1 at ¶¶ 12-13) Plaintiff had no disciplinary issues during his employment with the University prior to August 30, 2020. (*Id.* at ¶ 40)

To prepare for the ongoing COVID-19 pandemic prior to the start of the fall semester in August 2020, the University established separate quarantine residence halls (the "Residence Halls") for students who tested positive or were suspected of having the COVID-19 virus. (*Id.* at ¶¶ 15-17) As part of those preparations, the University planned to have its transportation services transport students to and from the Residence Halls. However, transportation services could not provide transport to students until several days after the beginning of the semester because safety training did not occur until September 1, 2020. (*Id.* at ¶ 18) In the interim, the University required members of its Police Department to transport students to and from the Residence Halls from August 29 until September 1. (*Id.* at ¶ 19)

Members of the Police Department did not receive training on how to safely transport students, how to operate the transport vans, how to use the decontamination machine, or how to properly use the personal protective equipment ("PPE") provided to them. (*Id.* at ¶¶ 19-22) This caused Plaintiff some concern, and he shared his misgivings with Lieutenant Adrienne Thomas. (*Id.* at ¶ 23) Lieutenant Thomas instructed Plaintiff not to brief his squad on the transports and to call her immediately if he received a transport call. (*Id.* at ¶¶ 24-26) On August 30, 2020, Lieutenant Thomas advised Plaintiff that she raised his concerns with Major Evans, who responded that the Police Department was required to conduct transports of students to and from the Residence Halls until September 1, 2020, regardless of the risk. (*Id.* at ¶ 27)

2

That same evening, Plaintiff received a dispatch call to transport a student to the Residence Hall. (*Id.* at ¶ 29) Plaintiff informed his squad that he was concerned about the risk of exposure to the virus and the lack of training on how to conduct such a transport, and the members of Plaintiff's squad each indicated they were also unwilling to conduct the transport. (*Id.* at ¶¶ 29-30) Plaintiff contacted Lieutenant Thomas to report the alleged health and safety violations associated with the requested transport. Lieutenant Thomas advised Plaintiff to choose a member of his squad to conduct the transport, and when he declined to do so, she selected Corporal Leland Barker to conduct the transport. (*Id.* at ¶¶ 31-32)

Plaintiff provided Corporal Barker with the motor pool keys and offered to assist him with his PPE equipment. (*Id.* at ¶ 33) After completing the transport, Corporal Barker told Plaintiff that the plastic barriers in the transport vans had gaps in them. (*Id.*)

Later that evening, Lieutenant Thomas placed Plaintiff on emergency administrative leave. (*Id.* at ¶ 34) The following day, Captain Jason Pires and Lieutenant Ferrill informed Plaintiff that he was the subject of an internal affairs investigation and had been charged with insubordination. (*Id.* at ¶ 35) On October 20, 2020, the University released a personnel order prematurely stating Plaintiff was terminated pending a Criminal Justice Council ("CJC") hearing. (*Id.* at ¶¶ 36-37, 43-44) Plaintiff continued to receive his full salary and benefits following his receipt of the personnel order. (*Id.* at ¶ 37)

On December 4, 2020, the charge of insubordination against Plaintiff was substantiated, and Plaintiff was officially terminated in accordance with the University's disciplinary matrix, which permits discipline between forty hours of suspension and termination for a first act of subordination. (*Id.* at ¶¶ 38-41) No Caucasian employees were disciplined or terminated for the same violations. (*Id.* at ¶¶ 41-42)

Plaintiff initiated this civil action against Defendants on January 6, 2022 to seek relief for this chain of events, alleging causes of action for violations of the Delaware Whistleblowers' Protection Act ("WPA"), 19 *Del. C.* § 1702 (Count I); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et al. (Count II); 42 U.S.C. § 1983 (Count III); and 42 U.S.C. § 1981 (Count IV). (D.I. 1) After waiving service, Defendants responded to the complaint with the instant motion to dismiss filed on May 31, 2022. (D.I. 5) Thereafter, Plaintiff agreed to dismiss Count IV of the complaint for violations of 42 U.S.C. § 1981. (D.I. 8 at 13 n.11) Plaintiff also seeks leave to amend depending on the court's recommendation as to some or all counts. (D.I. 8 at 7 n.4, 15, 16)

## II.   LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-91 (3d Cir. 2016).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## III. DISCUSSION

### A. Count I - Delaware Whistleblowers' Protection Act

The WPA protects employees who are fired for reporting violations of certain state and federal laws. *Pratt v. M&T Bank Corp.*, 230 F. Supp. 3d 343, 346 (D. Del. 2017) (citing *Smith v. Del. State Univ.*, 47 A.3d 472, 476 (Del. 2012)). Section 1703 of the WPA provides that "[a]n employer shall not discharge, threaten, or otherwise discriminate against an employee. . . [b]ecause the employee . . . reports or is about to report . . . verbally or in writing, a violation which the employee knows or reasonably believes has occurred or is about to occur[.]" 19 *Del. C.* § 1703(1). The statute defines a "violation" narrowly as an act or omission by the employer that is

> [m]aterially inconsistent with, and a serious deviation from, standards implemented pursuant to a law, rule, or regulation promulgated under the laws of this State, a political subdivision of this State, or the United States, to protect employees or other persons from health, safety, or environmental hazards while on the employer's premises or elsewhere[.]

5

19 *Del. C.* § 1702(6)(a). Thus, to state a claim under the WPA, Plaintiff must allege that: "(1) [he] engaged in a protected whistleblowing activity; (2) the accused official knew of the protected activity; (3) [Plaintiff] suffered an adverse employment action; and (4) there is a causal connection between the whistleblowing activity and the adverse action." *Doe v. New Castle County*, C.A. No. 21-1450-RGA, 2022 WL 1909394, at *6 (D. Del. Jun. 3, 2022) (quoting *Chance v. Kraft Heinz Foods Co.*, 2018 WL 6655670, at *10 (Del. Super. Ct. Dec. 17, 2018)).

Defendants argue that the complaint fails to satisfy the first and fourth elements. (D.I. 6 at 5-9) For the following reasons, I recommend that the court deny Defendants' motion to dismiss Count I of Plaintiff's complaint.

### 1. Allegations of "protected activity"

To meet the first element of a WPA claim at this stage of the proceedings, Plaintiff must allege that he reported conduct which he reasonably believed to be a violation of the law. *See Kelsall v. BayHealth, Inc.*, 2015 WL 9312477, at *2 (Del. Super. Ct. Dec. 18, 2015). Here, the complaint alleges that the officers were not trained on how to operate the transport vans, how to use the decontamination machine, or how to properly use personal protective equipment ("PPE"). (D.I. 1 at ¶¶ 20-23) The complaint further alleges that Plaintiff informed Lieutenant Thomas of his concerns about the health and safety risks to officers resulting from transporting students without proper training. (*Id.* at ¶ 23) The pleading specifies that the alleged health and safety violations include violations of OSHA standards, CDC regulations and guidelines, and the safety and health provision at Article XII of Plaintiff's collective bargaining agreement. (*Id.* at ¶ 47) These allegations, taken as true, are sufficient to establish a "protected activity" at this early stage of the proceedings. *See Jones v. Navient*, 2022 WL 2063308, at *2 (Del. Super. Ct. May

25, 2022) (finding allegations that plaintiff reported grievances of unfair treatment and harassment to management were sufficient to state a claim under the WPA).

Defendants argue that the complaint does not plausibly allege a violation of any law, rule, or regulation because Plaintiff fails to cite to a specific provision of the OSHA standards, CDC regulations and guidelines, and/or the safety and health provision at Article XII of Plaintiff's collective bargaining agreement that were allegedly violated. (D.I. 6 at 5-7) But at this stage of the proceedings, it is sufficient to plead reported conduct that the plaintiff "reasonably believed to be a violation of law, even if he did not plead facts showing which law he believed [the defendant's] misconduct violated." *Jones*, 2022 WL 2063308, at *2. There is no requirement that Plaintiff must identify in the complaint the specific provisions which were allegedly violated. *See Chance v. Kraft Heinz Foods Co.*, 2018 WL 6655670, at *11 (Del. Super. Ct. Dec. 17, 2018) (acknowledging that the plaintiff may state a claim despite being uncertain of the specific law, or even that there is a law, when reporting the conduct). The cases cited by Defendants require more specificity only at the dispositive motion stage. *See, e.g., Hanzer v. Nat'l Mentor Healthcare, LLC*, C.A. No. 12-363-LPS-MPT, 2014 WL 1390889, at *6 (D. Del. Apr. 10, 2014) (granting summary judgment due to the plaintiff's failure to identify any statute, rule, or regulation establishing a violation under the WPA); *Johnson v. Res. For Human Dev., Inc.*, 789 F. Supp. 2d 595, 601 (E.D. Pa. 2011).

Defendants also cite the absence of pleaded allegations confirming that Plaintiff relayed the alleged violations or the purported illegality of the University's directive to Lieutenant Thomas. (D.I. 10 at 1-2) But the complaint expressly states that "Plaintiff contacted Lieutenant Adrienne Thomas to report his concern over using the Police Department to transport COVID positive students without proper training. He stated it created an unnecessary exposure and

7

health and safety risk to officers for non-law enforcement purposes." (D.I. 1 at ¶ 23) This is sufficient to satisfy the pleading standard, and there is no requirement for Plaintiff to cite the specific law or regulation alleged to have been violated. *See Jones*, 2022 WL 2063308, at *2.

### 2. University's awareness of alleged safety concerns

Defendants allege that Plaintiff's WPA claim fails as a matter of law due to the complaint's acknowledgement that the violations cited by Plaintiff were already known to the University. (D.I. 6 at 7) According to Defendants, the purpose of the WPA is not served when an employee reports information already known to the employer. (D.I. 10 at 4)

Plaintiff does not refute Defendants' argument that the University was aware of the alleged violations before Plaintiff provided notice of those violations. Instead, Plaintiff focuses on the University's knowledge of Plaintiff's reports, which is a required element to state a claim under the WPA. (D.I. 8 at 10) Plaintiff also argues that the nonbinding cases cited by Defendants are distinguishable because they did not involve application of Delaware's WPA, and the employers in those cases took corrective action to fix the known violations. (*Id.* at 11)

Viewing the pleaded allegations in the light most favorable to Plaintiff, the court finds that the University's prior awareness of the alleged safety violations does not negate the whistleblowing effect of Plaintiff's report. The complaint states that "Defendant was previously aware of the health and safety hazards and violations relating to the COVID transports, however, Defendant failed to take corrective or protective action." (D.I. 1 at ¶ 48) Thus, the complaint specifies that the University took no corrective action based on its prior knowledge. *Cf. Pedersen v. Bio-Med. Applications of Minn.*, 992 F. Supp. 2d 934, 939 (D. Minn. 2014), *aff'd*, 775 F.3d 1049 (8th Cir. 2015) (finding that plaintiff's complaints did not constitute whistleblower "reports" where the defendant was already aware of the issue and had taken steps

to correct it). Consequently, the University's prior awareness of the alleged safety violations does not provide a sufficient basis to dismiss Count I of the complaint at this stage.

Plaintiff correctly notes that the cases cited by Defendants are from outside this district and did not invoke Delaware's WPA, and Defendants acknowledge that they were unable to find a Delaware case supporting their position. (D.I. 8 at 11; D.I. 10 at 5 n.6) Defendants' authority is also of limited persuasive value because the facts of those cases are not on all fours with the allegations presently before the court. Each of the cases cited by Defendants involved circumstances where the employer already knew of the violation and was also taking corrective action. *See Pedersen*, 992 F. Supp. 2d at 939; *U.S. ex. rel. Hartman v. Allegheny Gen. Hosp.*, 2005 WL 2106627, at *5 (W.D. Pa. Aug. 26, 2005) (finding no protected whistleblower activity where employer was already aware of billing problem and had taken steps to address it); *Pelant v. Pinnacle Airlines, Inc.*, 2006 WL 2286381, at *6-7 (D. Minn. Aug. 8, 2006) (finding no whistleblowing where the employer knew of the industry-wide problem and expressed its own concerns about the issue); *Moss v. Kentucky State Univ.*, 465 S.W.3d 457, 460 (Ky. Ct. App. 2014) (finding no cause of action under the Whistleblower Act where the defendant was aware of accounting problems and was attempting to address them). Here, the complaint specifies that the University did not take corrective action despite its knowledge of the alleged safety violations. (D.I. 1 at ¶ 48) As a result, it is plausible that Plaintiff's report could expose safety violations for the benefit of the public in the face of the University's prior inaction.

### 3. Inference of termination due to complaints about safety concerns

Defendants argue that the complaint also fails to satisfy the fourth element of a WPA claim because it alleges the mere fact of a report followed by termination, instead of showing that Plaintiff was terminated because of his report. (D.I. 6 at 8) According to Defendants,

9

temporal proximity between the report and the termination is not enough, by itself, to establish causation. (D.I. 10 at 6-7)

Plaintiff responds that the complaint's allegations are sufficient to give rise to an inference that the protected whistleblowing activity was the "primary basis" for Plaintiff's termination. (D.I. 8 at 12) Plaintiff rejects Defendants' position that the complaint's allegations on causation are based solely on temporal proximity. (*Id.* at 12-13) Nonetheless, Plaintiff does not identify any other pleaded basis for causation.

At this stage, Plaintiff adequately pleads a causal connection between his alleged protected activity and his subsequent termination. *See Jones*, 2022 WL 2063308, at *3. The court can infer that Plaintiff's protected whistleblowing activity was the "primary basis" for his termination based on the complaint's allegations of temporal proximity. *See Thomas v. Del. State Univ.*, C.A. No. 10-522-GMS, 2014 WL 5020275, at *7 (D. Del. Oct. 6, 2014) (explaining that "timing is a critical factor in assessing causation" under Delaware's WPA). The complaint alleges that Plaintiff made his report on the evening of August 30, 2020, he was placed on emergency administrative leave later that same evening, and he was charged with insubordination the following day. (D.I. 1 at ¶¶ 29-31, 34-35, 50) Viewing these allegations in the light most favorable to Plaintiff, it is reasonable to infer that Plaintiff's report of the alleged safety violations was the primary basis for the adverse employment actions against him.

Defendants argue that temporal proximity alone is insufficient to establish causation for purposes of stating a claim under Delaware's WPA. (D.I. 6 at 8-9; D.I. 10 at 6-7) But none of the cases cited by Defendants in support of this argument addressed causation under Delaware's WPA. At least one case from within this district suggests that temporal proximity is a "critical factor in assessing causation" under Delaware's WPA. *Thomas*, 2014 WL 5020275, at *7.

Consequently, I recommend that the court deny Defendants' motion to dismiss Count I of the complaint at this early stage of the proceedings.

### B. Counts II and III - Title VII and Section 1983 Claims Against the University

Counts II and III of the complaint plead causes of action against the University for racial discrimination in violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §§ 2000e *et al.*, and 42 U.S.C. § 1983, respectively. (D.I. 1 at ¶¶ 55-76) Defendants argue that Plaintiff's Title VII and § 1983 claims against the University should be dismissed because Plaintiff has failed to show he suffered an adverse employment action due to his race, and the complaint sets forth only conclusory allegations. (D.I. 6 at 10) Plaintiff responds that the pleaded allegations are sufficient to state a claim at this early stage of the proceedings. (D.I. 8 at 14-15)

Title VII prohibits employment practices that "cause[ ] a disparate impact on the basis of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(k). To state a claim for employment discrimination under Title VII, a plaintiff must allege that: "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination." *Peterson v. Shulkin*, C.A. No. 16-160-LPS, 2018 WL 1316200, at *4 (D. Del. Mar. 14, 2018) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To plead a cause of action for denial of equal protection under § 1983, a plaintiff must plausibly allege that a person acting under color of state law subjected the plaintiff to different treatment than other similarly situated individuals. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014). At the pleading stage, "[a] plaintiff need not convince the court of any of these elements . . . but must submit more than naked assertion that he suffered

an adverse employment action because of his membership in a protected class." *Blades v. Mosaic of Del.*, C.A. No. 16-627-GMS, 2017 WL 3868238, at *6 (D. Del. Aug. 31, 2017) (citing *Santos v. Iron Mountain Film & Sounds*, 593 F. App'x 117, 119 (3d Cir. 2014)).

The pleaded allegations in this case fall into the latter category of naked assertions, which are insufficient to state a claim for discrimination. *See Holmes v. Gates*, 403 F. App'x 670, 673 (3d Cir. 2010) (explaining that the Rule 8 pleading standard requires more than "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements[.]"). The complaint alleges that Plaintiff was terminated "for alleged violations for which other Caucasian employees were not terminated or even disciplined for," and the University "has engaged in a pattern and practice of disproportionately treating and disciplining its African American officers, while failing to discipline its Caucasian officers." (D.I. 1 at ¶¶ 41-42) The complaint further alleges that the University prematurely issued a personnel termination order for Plaintiff, and no similar personnel orders were issued for Caucasian employees. (*Id.* at ¶ 44) Plaintiff confirms that these allegations constitute the totality of the facts pled in support of his race discrimination claims. (D.I. 8 at 14)

These allegations do not plausibly suggest that Plaintiff was treated differently than other employees because of his race. The complaint provides no details to support Plaintiff's position that violations committed by Caucasian officers were similar to Plaintiff's infractions, nor does it provide factual context regarding how the dispensation of discipline differed between Caucasian officers and African American officers. *See Holmes*, 403 F. App'x at 673 (finding employee's allegations of different treatment than that experienced by non-minority employees lacked the requisite specificity to state a claim for Title VII discrimination); *Jester v. State of Del. Dep't of Safety*, C.A. No. 14-1124-LPS, 2015 WL 5724366, at *5 (D. Del. Sept. 29, 2015) (dismissing

12

Title VII claim where complaint "does not provide a single fact, example, or detail to support these conclusory allegations."). Consequently, I recommend dismissal of Counts II and III of the complaint against the University.

### C. Count III - Section 1983 Claim Against Ogden in His Individual Capacity[2]

Count III also pleads a cause of action against Ogden in his individual capacity under § 1983. (D.I. 1 at ¶¶ 68-76) Both parties agree that Plaintiff's cause of action against Ogden individually under § 1983 requires a showing of Ogden's personal involvement in the alleged violation. (D.I. 6 at 14; D.I. 8 at 15-16); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Tait v. New Castle Cty. Police Dep't*, C.A. No. 19-348-MN, 2019 WL 5788487, at *2 (D. Del. Nov. 5, 2019) ("Liability in a 42 U.S.C. § 1983 action is personal in nature and, to be liable, a defendant must have been personally involved in the wrongful conduct."). The parties disagree about whether Plaintiff's pleaded allegations adequately show Ogden's personal involvement. (*Id.*)

Plaintiff alleges that Ogden was personally involved in the discrimination based on the following allegations in the complaint: (1) Ogden "terminated Plaintiff for alleged violations for which other Caucasian employees were not terminated or even disciplined for," (D.I. 1 at ¶ 41); (2) Ogden "engaged in a pattern and practice of disproportionately treating and disciplining [ ] African American officers, while failing to discipline [ ] Caucasian officers," (*id.* at ¶ 69); and (3) Ogden knew of the discriminatory conduct, but he acted with deliberate indifference and failed to report or investigate the alleged discrimination, (*id.* at ¶ 74). These allegations associate Ogden's name with Plaintiff's termination and the discriminatory conduct, but for the reasons

---

[2] Count III of the complaint alleges a cause of action against Defendant Ogden in both his official capacity and his individual capacity pursuant to 42 U.S.C. § 1983. (D.I. 1 at ¶¶ 68-76) In his answering brief, Plaintiff agrees to dismiss his § 1983 claim against Defendant Ogden in his official capacity. (D.I. 8 at 15)

13

previously discussed at § III.B, *supra*, they lack any factual context that might otherwise render them plausible. *See Victorious v. Lanigan*, 2016 WL 2981759, at *8 (D.N.J. May 23, 2016) (finding conclusory allegations were insufficient, standing alone, to establish the individual defendants' personal involvement in the alleged violations); *Meyer v. Hyatt*, 2016 WL 1079148, at *2 (D.N.J. Mar. 18, 2016) (dismissing individual § 1983 claim that failed to allege sufficiently specific facts showing that the individual defendants "turned a blind eye" to plaintiff's abuse).

The complaint does not plausibly establish that Ogden's termination of Plaintiff was the result of racial animus, nor does it include sufficient details to show that Ogden's alleged conduct was the result of racial discrimination. *See Gillette v. Prosper*, 852 F. App'x 642, 645 (3d Cir. 2021) (upholding dismissal of individual § 1983 claim where amended complaint contained general, conclusory statements that individual defendants were deliberately indifferent to the plaintiff's treatment). Consequently, I recommend that the court dismiss Count III of the complaint against Ogden in his individual capacity.

### D. Count IV - Section 1981 Claim

Plaintiff has agreed to dismiss Count IV of the complaint for violations of 42 U.S.C. § 1981. (D.I. 8 at 13 n.11) Consequently, I recommend that the court dismiss Count IV.

### IV. CONCLUSION

For the foregoing reasons, I recommend that the court GRANT-IN-PART Defendants' motion to dismiss without prejudice. (D.I. 5) Specifically, I recommend that the court GRANT the motion to dismiss Counts II to IV of the complaint, DENY the motion to dismiss Count I of the complaint, and GRANT Plaintiff's request for leave to amend the complaint.

Plaintiff may amend the complaint within 10 days of the expiration of the deadline for objections under Rule 72(b), or in accordance with a ruling from the court on objections, if any.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: February 2, 2023

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE