**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

RAUSHAN RICH,
Plaintiff,

v.

UNIVERSITY OF DELAWARE & CHIEF PATRICK OGDEN, in his individual and official capacity as Chief of Police of the University of Delaware,
Defendants.

Civil Action No. 22-27-RGA

# MEMORANDUM OPINION

Michele D. Allen, Delia Clark, ALLEN & ASSOCIATES, Wilmington, DE,

Attorneys for Plaintiff.

James D. Taylor, Jr., Jessica M. Jones, Juliana G. Clifton, SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, DE,

Attorneys for Defendants.

June 29, 2023

ANDREWS, U.S. DISTRICT JUDGE:

Before me is Defendants' motion to dismiss the amended complaint. (D.I. 26). I have reviewed the parties' briefing. (D.I. 27, 28, 29).

Plaintiff Raushan Rich is an African American former police Sergeant at the University of Delaware. (D.I. 23 at ¶¶13, 43). Plaintiff alleges that he faced racial discrimination and ultimately wrongful termination from his position. Plaintiff filed a timely Charge of Discrimination with the Equal Opportunity Employment Commission (EEOC), and he received a Right to Sue Notice. (D.I. 23 at ¶¶8-9). Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983, the Delaware Whistleblower's Protection Act, and a breach of the implied covenant of good faith and fair dealing. Defendants are the University and Patrick Ogden, the Chief of the University's police. The University is a defendant in all four counts; Ogden is a defendant in only the § 1983 claim.

## I. FACTUAL BACKGROUND

I accept the allegations of the amended complaint as true and view them in the light most favorable to Plaintiff.

Plaintiff contacted Lieutenant Adrienne Thomas on August 29, 2020, to report his concerns over the transportation of potentially COVID-positive students. He told her the police did not have proper training on how to don, doff, and dispose of personal protective equipment. (D.I. 23 at ¶¶ 23-24). When Plaintiff reported this concern, he was instructed by Lieutenant Thomas not to brief his squad on the COVID transports. (*Id.* at ¶26). On August 30, 2020, Plaintiff received a dispatch call to transport a COVID-positive patient, and he informed his squad that he did not feel comfortable making the transport. (*Id.* at ¶30). Because all members of his squad shared similar concerns, Plaintiff contacted Lieutenant Thomas, who informed Plaintiff

that he needed to select a member of his squad to make the transport or to face discipline. (*Id.* at ¶¶30-32). Corporal Leland Barker, who was inadequately trained, made the transport. (*Id.* at ¶33).

Later the same day, Plaintiff was placed on administrative leave. (*Id.* at ¶35). Captain Pires, who had previously opposed Plaintiff's promotion to Sergeant, announced the decision to proceed on an internal affairs investigation. (*Id.* at ¶71). As a result of the internal affairs investigation, Plaintiff was charged with insubordination. (*Id.* at ¶36). He was subsequently found to have been insubordinate and was terminated in December 2020. (*Id.* at ¶¶39-42).

Plaintiff contends that his termination resulted from a pattern of discriminatory and wrongful conduct against African Americans by the University of Delaware. (*Id.* at ¶43). The University failed to discipline Plaintiff's Caucasian colleagues for conduct "more egregious and serious" than Plaintiff's actions. (*Id.* at ¶70). This conduct included: a Caucasian officer training and being permitted to retain a K-9 service dog that was intentionally aggressive in the presence of African Americans, despite complaints from citizens; and a retired Caucasian officer working as a security officer but receiving the compensation of a police officer, in contravention of the rules of conduct. (*Id.* at ¶¶66-68).

Other than the incident for which Plaintiff was terminated, he had a clean disciplinary record. (*Id.* at ¶41). Plaintiff states his treatment was disparate. For the same sorts of violations, Plaintiff's Caucasian colleagues "were not terminated or even disciplined." (*Id.* at ¶¶41-42). Plaintiff states that he was terminated prior to the conclusion of his disciplinary process through a premature personnel order, a mishap which had never happened to any Caucasian colleagues. (*Id.* at ¶45). As a result of these actions, Plaintiff has suffered from "economic loss, emotional distress, and humiliation." (*Id.* at ¶53).

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a defendant can move to dismiss claims that fail to meet the Rule 8(a)(2) standard, which requires the complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief…" Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6). Courts should accept the well-pleaded facts of the complaint as true and grant a Rule 12(b)(6) motion only when those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The factual allegations asserted in the pleading do not have to be detailed, but they must provide more than labels, conclusions, or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A pleading states a facially plausible claim for relief when the court can draw the reasonable inference between the actions of the defendant and the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Title VII

Congress enacted Title VII of the Civil Rights Act of 1964 to protect against discriminatory employment practices on the basis of race, color, religion, sex, or national origin. 42 U.S.C.A. § 2000e, *et. seq*. A complainant alleging racial discrimination under Title VII bears the initial burden of establishing a prima facie case of racial discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The Third Circuit holds that, to establish a prima facie case for employment discrimination, a plaintiff must show that "1) s/he is a member of a protected class, 2) s/he was qualified for the position s/he sought to attain or retain, 3) s/he suffered an adverse employment action, and 4) the action occurred under circumstances that

could give rise to an inference of intentional discrimination." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (quoting *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)).

To establish an inference of intentional discrimination, a plaintiff must show that s/he was treated differently than similarly situated employees outside of his/her protected class who are otherwise alike for relevant criteria. *See, e.g., Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 217-19 (2015) (comparing the alleged discrimination against a pregnant worker to other non-pregnant workers with respect to workplace responsibilities); *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (stating that the inference of discrimination in a plaintiff's prima facie employment discrimination case arises when acts, "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors" such as race).

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to establish a legitimate, nondiscriminatory case for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. The defendant only needs to provide a legitimate reason for the discharge, which is generally understood as a "relatively light" burden. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). The plaintiff can rebut this reason by showing that it is pretextual and not legitimate. *See In re Tribune Media Co.*, 902 F.3d 384, 392 (3d Cir. 2018).

**C. 42 U.S.C. § 1983**

Section 1983 provides a person with a federal cause of action against an officer, acting under color of State or local law, who deprived the person of a constitutional right. In any § 1983 suit, a plaintiff must establish that the defendant acted with a culpable "state of mind required to prove the underlying intention" of violating plaintiff's constitutional rights. *Board of Cnty. Comm'rs of Byran Cnty., Okla. v. Brown*, 520 U.S. 397, 405 (1997). Section 1983 permits suits

against governing bodies and individual officials acting in their official capacity when administrative policies, regulations, or governmental customs deprive individuals of their constitutional rights. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). To raise a prima facie case under § 1983, a plaintiff must demonstrate that "1) a person deprived him of a federal right; and 2) the person who deprived him of that right acted under color of state or territorial law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).

**D. Delaware Whistleblower's Protection Act**

The Delaware Whistleblower Protection Act (WPA) protects employees who are terminated for reporting violations of state and federal laws, including those of public health and safety. 19 Del. C. § 1702. The WPA "encourage[s] reporting," "promotes public health and safety," and "provides a check on persons in positions of authority." *Pratt v. M&T Bank Corp.*, 230 F. Supp. 3d 343, 346 (D. Del. 2017) (citing *Smith v. Univ. of Del.*, 47 A.3d 472, 476 (Del. 2012)).

## III. DISCUSSION

**A. Title VII Claim Against University of Delaware Police**

Plaintiff fails to establish a prima facie case of racial discrimination in employment under Title VII. Plaintiff's amended complaint does not expressly allege that he is a member of a protected class, but clearly Plaintiff could amend the complaint to state, as he did in his original complaint, that he is African American.[1] Plaintiff was qualified to be a police sergeant, and he was terminated. He does not, however, adequately allege intentional discrimination giving rise to his termination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. The complaint makes no

[1] The original complaint (D.I. 1) made the allegation in a dismissed claim that has not been realleged.

reference to a similarly situated employee, alike in relevant aspects except race, or indeed to any employee, who was found to be insubordinate and yet was not terminated.

Plaintiff's comparators include two unnamed Caucasian police officers, both of whom allegedly committed infractions and did not face discipline. (D.I. 23 at ¶¶66-68). These infractions include an officer who retained a K-9 trained to be aggressive towards African Americans, despite the "complaints of citizens," and a retired officer who received more benefits and compensation than allowed by the rules of conduct, an offense punishable by termination. (*Id.*). Plaintiff additionally alleges that "upon information and belief, Defendant has not issued…personnel orders" that subjected fellow Caucasian employees to an early termination like the personnel order Plaintiff received. (*Id.* at ¶45).

The factual allegations specific to the unnamed Caucasian officers are insufficient to allege that Plaintiff's termination was made because Defendant was acting in a racially discriminatory manner. "A determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." *Bhatnagar v. Meyer*, 2021 WL 7209368, at *4 (D. Del. Dec. 20, 2021) (quoting *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d. Cir. 2011)). Plaintiff's allegations do not provide a sufficient factual basis to draw an inference of intentional discrimination based on factors including job responsibilities, nature of the misconduct, or shared supervisors. *Id.*

The nature of the unnamed officers' misconduct is not substantially similar to Plaintiff's insubordination — neither comparator officer disobeyed orders of their supervisor. (*See generally* D.I. 23); *Wright v. Providence Care Ctr., LLC*, 822 F. App'x 85, 93 (3d Cir. 2020) (holding that comparator evidence finding qualitatively different disorderly conduct does not

sufficiently allege that two employees were similarly situated). Plaintiff does not allege that he shared supervisors with the unnamed comparators. *See Carter v. Midway Slot and Simulcast*, 511 F. App'x 125, 128 (3d Cir. 2013) (noting that shared supervision is a helpful comparator for determining whether employees are similarly situated for the purposes of Title VII claims). One of them was "retired." The rank of the other is not stated. Plaintiff makes no indication that the Caucasian officers shared job responsibilities or other similar employment characteristics to prove that he was similarly situated. *See Haskins v. Christiana Care Health Servs.*, 701 F. Supp. 2d 623, 630 (D. Del. 2010). Therefore, the unnamed Caucasian officers are not substantially similar comparators for Plaintiff.

Plaintiff contends that it is sufficient, but not necessary, to allege a prima facie case of discrimination. (D.I. 28 at ¶7). Plaintiff relies upon *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021). This is because the "complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element'" of a prima facie case at the motion to dismiss phase. *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)). Plaintiff argues that he has pleaded enough to raise this reasonable expectation and that this case should proceed to discovery. (D.I. 28 at 6-9).[2] The factual matter pleaded, however, must still contain allegations of similarly situated individuals who faced termination. *See Young*, 575 U.S. at 229.[3]

---

[2] Plaintiff cites to *Bhatnagar v. Meyer*, 2021 WL 7209368, at *4 (D. Del. Dec. 20, 2021), to argue that his pleading is sufficient because the burden on the plaintiff at the motion to dismiss stage should not be onerous. In *Bhatnagar*, however, the plaintiff and alleged comparators were all accused of insubordination-related offenses, making them substantially similar in relevant respects — unlike the alleged comparators in Plaintiff's pleading.

[3] Plaintiff further states that the court's focus on similarly situated employees is "misplaced" at this stage because it is a question of fact to be decided "upon a full record." (D.I. 28 at 10). Plaintiff relies on *Ferrell v. City of Wilmington*, 2023 WL 1437765 at *4 (D. Del. Feb. 1, 2023), a case in which the initial pleading contained specific allegations that the plaintiff's colleagues made racist comments, unlike Plaintiff's pleading.

Aside from the factual allegations about the two unnamed Caucasian officers, Plaintiff merely makes conclusory statements about Defendant's "pattern and practice of disproportionately treating and disciplining its African American officers" without any additional factual allegations. (D.I. 23 at ¶43); *see Iqbal*, 556 U.S. at 678 (holding that courts do not have to accept the "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" that fail to meet the Fed. R. Civ. P. 8(a)(2) standard). Therefore, Plaintiff's allegations do not support the reasonable inference that Plaintiff experienced racial discrimination when he was terminated for insubordination.

For these reasons, I will dismiss Plaintiff's Title VII claim against the University.

**B. § 1983 Claim Against the University and Chief Ogden**

Plaintiff has failed to sufficiently allege that Defendants University of Delaware and Chief Ogden violated his constitutional right to equal protection while acting under color of state law. 42 U.S.C. § 1983. Plaintiff reiterates in Count III of his complaint that Defendants, acting under "color of state law, have engaged in a pattern and practice of disproportionately treating and disciplining [University of Delaware's] African American officers, while failing to discipline [University of Delaware's] Caucasian officers." (D.I. 23 at ¶77). Plaintiff claims that these instances "substantially [interfered] with Plaintiff's work performance by creating a hostile, intimidating and offensive working environment." (D.I. 23 at ¶78). Plaintiff's factual allegations, however, do not support this conclusory statement.

Plaintiff does not allege how the officer with the aggressively trained K-9 or the retired officer created a "hostile" environment or any more expansive pattern of discrimination pursuant to an official policy or local custom. *See Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 118 (3d Cir. 2017) (holding that a § 1983 claim against a municipality must show injury caused

by a government's policy or custom). Plaintiff's "incidents of race discrimination" comparing Plaintiff to the unnamed Caucasian officers are legal conclusions. (D.I. 23 at ¶78). These claims are vague and factually insufficient to allege a violation of Plaintiff's rights under the Equal Protection Clause. I will therefore dismiss the § 1983 claim against the University of Delaware and Chief Ogden in his official capacity.

Plaintiff additionally brings a § 1983 claim individually against Chief Ogden. (D.I. 23 at ¶77). Plaintiff alleges that Ogden "knew of the discriminatory conduct, acted with deliberate indifference and failed to report or investigate the discrimination occurring," which contributed to Plaintiff's continual experience of discrimination. (*Id.* at ¶82). Plaintiff also alleges that Defendant University of Delaware, acting through Chief Ogden, terminated Plaintiff for the alleged violations for which other Caucasian employees were not disciplined. (*Id.* at ¶42). Plaintiff further states that Ogden has an "open door policy," but Plaintiff was instructed by Captain Pires not to speak to Ogden directly on issues in contradiction of this policy. (*Id.* at ¶72). Aside from these allegations, Chief Ogden's name is almost never mentioned in the complaint.

I agree with the Magistrate Judge's Report and Recommendation in regard to the very similar original complaint that, while the assertions in Plaintiff's amended complaint associate Ogden with Plaintiff's termination, they fail to provide "factual context that might otherwise render them plausible" as a basis for finding Ogden liable. (D.I. 17 at 14); *see also Victorious v. Lanigan*, 2016 WL 2981759, at *8 (D.N.J. May 23, 2016) (holding that general, conclusory allegations are insufficient to allege an individual defendant's personal involvement in the alleged discrimination). I cannot infer that Ogden's open-door policy supports an inference of his individual involvement in any discriminatory behavior. (D.I. 28 at 13). Because Plaintiff "does not plausibly establish that Ogden's termination of Plaintiff was the result of racial animus, nor

does it include sufficient details to show that Ogden's alleged conduct was the result of racial discrimination," I will dismiss Plaintiff's § 1983 claim against Ogden individually. (D.I. 17 at 14). Therefore, I will grant Defendants' motion to dismiss Count III.

**C. State Law Claims**

Plaintiff brings state law claims under the WPA and the implied covenant of good faith and fair dealing. Because I grant Defendants' Rule 12(b)(6) motion to dismiss both the federal claims, I decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims. I note that federal law provides that the statute of limitations on the state law claims has been tolled during the pendency of this case, and will be tolled for a further 30 days after the Order accompanying this Memorandum Opinion is entered. 28 U.S.C. § 1367(d).

## IV. CONCLUSION

Plaintiff has failed to plausibly allege Title VII and § 1983 violations. For these reasons, I will dismiss Counts II and III against Defendants pursuant to Rule 12(b)(6). I will dismiss Plaintiff's state law claims without prejudice pursuant to 28 U.S.C. § 1367(d).